UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| MICHAEL L. JILES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | No. 16-2057-JDT-cgc |
| | ) | |
| STATE OF TENNESSEE, | ) | |
| | ) | |
| Defendant. | ) | |

ORDER DISMISSING COMPLAINT AND GRANTING LEAVE TO AMEND

On January 26, 2016, Plaintiff Michael L. Jiles ("Jiles"), an inmate at the Bledsoe County Correctional Complex ("BCCX"), in Pikeville Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 accompanied by a motion for leave to proceed *in forma pauperis*. (ECF Nos. 1 & 2.) The complaint concerns Jiles's previous incarceration as a pre-trial detainee at the Shelby County Criminal Justice Complex ("Jail") in Memphis, Tennessee. After Jiles submitted the necessary documentation, the Court issued an order on February 18, 2016, granting leave to proceed *in forma pauperis* and assessing the civil filing fee pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(a)-(b). (ECF No. 6.) The Clerk shall record the Defendant as the State of Tennessee.

I. THE COMPLAINT

Jiles alleges that between the months of May and June 2015, he woke up in pain and started throwing up. (ECF No. 1 at 2.) Hours later he was taken to the hospital at the Med[1] where he found out that he had two holes burned in his stomach and was rushed into surgery.

---
[1] "The Med" is common way of referring to the Regional Medical Center at Memphis.

(*Id.*)  A week later he was taken back to the Jail. (*Id.*) On the day of the incident, he contends that he asked the 10-6 Shift Officer, Ms. Johnson, who is not a party to this complaint, to call a code white, but she did not, resulting in Jiles having to wait until the 6-2 shift before a code white was called. (*Id.*)

Jiles seeks monetary compensation for the injury, pain and suffering, disfigurement, and any future medical complications. (*Id.* at 3.)

Jiles provides more detailed allegations in narratives attached as exhibits to the complaint. Jiles alleges that he was in third floor Delta Pod when he began having difficulty fully inhaling because of his stomach and also experiencing chest pain. (ECF No. 1-1, Ex. A.) When the pain got worse and a knot appeared under his arm, he alerted the staff and a code white was called. (*Id.*) While in second floor medical, the doctor and nurses stated they did not know what was causing the knot. (*Id.*) Jiles asked if he could go to the Med to get an x-ray and identify what was causing the problem; however, he was told that it was probably not that serious, given Tylenol for the pain, and sent back to his pod. (*Id.*) Jiles alleges that days later another code white was called because of his chest and stomach pain, but he still was not given anything that helped, only Tylenol, and still no outside medical treatment was requested for him. (*Id.*)

After about a week passed, Jiles alleges that he awoke from his sleep with a burning sensation and pain in his stomach and difficulty breathing. (ECF No. 1-2, Ex. B.) Jiles attempted to get out of bed so an officer would call a code white, but pain shot through his whole upper body causing him to roll out of bed and land on the floor. (*Id.*) Jiles's cellmate asked what was wrong with him, and Jiles told him to tell the staff to call a code white due to Jiles having severe stomach pain and feeling like he was going to pass out. (*Id.*) While Jiles's

cellmate was calling for staff, Jiles got out of bed and began throwing up red and yellow liquid, which Jiles identified as blood and acid. (*Id.*) Jile's cellmate again yelled for help from staff. (*Id.*)

Jiles further alleges that minutes later, Officer Johnson arrived, and was asked by Jiles's cellmate to call a code white and given details of Jiles's condition. (ECF No. 1-3, Ex. C.) However, she replied that she could not call a code white just because Jiles was throwing up and went back to the staff station at the back of the pod even though she saw Jiles lying on the floor. (*Id.*) While Ms. Johnson was sitting at the staff station, Jiles's cellmate asked her what time it was. She replied "past five," and Jiles's cellmate asked if she would please call a code white. (*Id.*) As Johnson walked out of the pod, she replied that she would see when she got back. (*Id.*) While she was gone, Jiles continued to throw up and lie on the floor because it was hard for him to get up without causing himself more stomach pain. (*Id.*) When Johnson came back, Jiles's cellmate asked her again to call a code white. (*Id.*) She apparently called medical and reported the nurses told her they could not call a code white just for throwing up, then she left. (*Id.*) Jiles's cellmate told him that all Johnson did was pick up the phone. (*Id.*) His cellmate attempted to help Jiles up, but it caused too much pain, so he gave Jiles his pillow. (*Id.*) Jiles lay on the floor, but could not get into a fetal position because of the pain. (*Id.*)

Jiles contends that he remained on the floor until the 6-2 shift and that it was after 7:30 when an officer called a code white because Jiles would not get off the floor due to the pain. (ECF No. 1-4, Ex. D.) Jiles alleges that hours passed before he was taken to the Med, where he was given IV's and x-rayed. (*Id.*) He was later told that there were two holes burnt inside his stomach and had to be rushed into surgery. (*Id.*) He was returned to the Jail several days later. (*Id.*)

3

II. ANALYSIS

A.   Screening and Standard

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); see also 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the standards under Fed. R. Civ. P. 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007), are applied. *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). "Accepting all well-pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681) (alteration in original). "[P]leadings that . . . are no more than conclusions . . . are not entitled to the assumption of truth. While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"A complaint can be frivolous either factually or legally. Any complaint that is legally frivolous would *ipso facto* fail to state a claim upon which relief can be granted." *Hill*, 630 F.3d at 470 (citing *Neitzke v. Williams*, 490 U.S. 319, 325, 328-29 (1989)).

> Whether a complaint is factually frivolous under §§ 1915A(b)(1) and 1915(e)(2)(B)(i) is a separate issue from whether it fails to state a claim for relief. Statutes allowing a complaint to be dismissed as frivolous give "judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neitzke*, 490 U.S. at 327, 109 S. Ct. 1827 (interpreting 28 U.S.C. § 1915). Unlike a dismissal for failure to state a claim, where a judge must accept all factual allegations as true, *Iqbal*, 129 S. Ct. at 1949-50, a judge does not have to accept "fantastic or delusional" factual allegations as true in prisoner complaints that are reviewed for frivolousness. *Neitzke*, 490 U.S. at 327-28, 109 S. Ct. 1827.

*Id.* at 471.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants and prisoners are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, No. 09-2259, 2011 WL 285251, at *5 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'") (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)) (alteration in original); *Payne v. Sec'y of Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003) (affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); *cf. Pliler v. Ford*, 542 U.S. 225, 231 (2004) ("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."); *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011) ("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would

transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

B.  § 1983 Claim

Jiles filed his complaint on the court-supplied form for actions under 42 U.S.C. § 1983. Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

Plaintiff has sued only the State of Tennessee. However, Plaintiff has no claim against the State under 42 U.S.C. § 1983. The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Eleventh Amendment has been construed to prohibit citizens from suing their own states in

federal court.  *Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 472 (1987); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Employees of Dep't of Pub. Health & Welfare v. Mo. Dep't of Pub. Health & Welfare*, 411 U.S. 279, 280 (1973); *see also Va. Office for Protection & Advocacy v. Stewart*, 131 S. Ct. 1632, 1638 (2011) ("A State may waive its sovereign immunity at its pleasure, and in some circumstances Congress may abrogate it by appropriate legislation.  But absent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State." (citations omitted)).  By its terms, the Eleventh Amendment bars all suits against a State, regardless of the relief sought.  *Pennhurst*, 465 U.S. at 100-01.  Tennessee has not waived its sovereign immunity.  Tenn. Code Ann. § 20-13-102(a).  Moreover, a state is not a person within the meaning of 42 U.S.C. § 1983.  *Lapides v. Bd. of Regents of the Univ. Sys. of Ga.*, 535 U.S. 613, 617 (2002); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

### III.  LEAVE TO AMEND

The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA.  *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013); *see also Brown v. R.I.*, No. 12-1403, 2013 WL 646489, at *1 (1st Cir. Feb. 22, 2013) (per curiam) ("Ordinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies in the complaint must be afforded.").  Leave to amend is not required where a deficiency cannot be cured.  *Brown*, 2013 WL 646489, at *1; *Gonzalez-Gonzalez v. United States*, 257 F.3d 31, 37 (1st Cir. 2001) ("This does not mean, of course, that every *sua sponte* dismissal entered without prior notice to the plaintiff automatically must be reversed.  If it is crystal clear that the plaintiff cannot prevail and that amending the complaint would be futile, then a *sua sponte* dismissal may stand."); *Grayson v. Mayview State*

7

*Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002) ("*in forma pauperis* plaintiffs who file complaints subject to dismissal under Rule 12(b)(6) should receive leave to amend unless amendment would be inequitable or futile"); *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with the majority view that sua sponte dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts."). In this case, an amendment to the complaint would not necessarily be futile as a matter of law.

IV.  CONCLUSION

The Court DISMISSES the complaint for failure to state a claim on which relief can be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). However, leave to amend is GRANTED. Any amendment must be filed within thirty (30) days of the date of entry of this order. Jiles is advised that an amended complaint supersedes the original complaint and must be complete in itself without reference to the prior pleadings. The text of the amended complaint must allege sufficient facts to support each claim without reference to any extraneous document. Any exhibits must be identified by number in the text of the amended complaint and must be attached to the complaint. All claims alleged in an amended complaint must arise from the facts alleged in the original complaint. Each claim for relief must be stated in a separate count and must identify each defendant sued in that count. If Jiles fails to file an amended complaint within the time specified, the Court will assess a strike pursuant to 28 U.S.C. § 1915(g) and enter judgment.

IT IS SO ORDERED.

    s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE